UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

CIVIL ACTION NO. 2006-26 (WOB)

INDIANA STATE DISTRICT COUNCIL
OF LABORERS AND HOD CARRIERS PENSION
AND WELFARE FUND                                              PLAINTIFFS

VS.                    MEMORANDUM OPINION AND ORDER

OMNICARE, INC., ET AL                                         DEFENDANTS


        This matter is before the court on defendants' motion to
dismiss (Doc. #59), plaintiffs' motion to add an additional named
plaintiff (Doc. #76), and defendants' motion for leave to file a
surreply (Doc. #89).

### Factual and Procedural Background

        Defendant Omnicare, Inc. is a provider of pharmaceutical
care services to the elderly and other residents of long-term
care facilities in the United States and Canada.  During the
relevant time, Omnicare securities traded publicly on the NASDAQ
National Market.  Defendant Joel Gemunder is Omnicare's CEO;
defendant David Froesel is its CFO and a Senior Vice-President;
defendant Cheryl Hodges is its Secretary and a Senior Vice-
President; defendant Edward Hutton is Chairman of the Omnicare
Board of Directors; and defendant Sandra Laney is a Director.

        This proposed class action was filed on February 2, 2006,
alleging claims for violations of § 10(b) and § 20(a) of the

Securities Exchange Act of 1934.  (Doc. #1)  Plaintiffs alleged generally that defendants engaged in a fraudulent scheme that artificially inflated Omnicare's stock price by misrepresenting the company's financial results and business practices.  A second, and essentially identical, case was filed on February 13, 2006, styled *Chi v. Omnicare, Inc., et al.*, Cov. Civil Action No. 06-31 ("the *Chi* action").

As directed by the PSLRA, upon filing this action, the Lerach firm published a notice over a national wire service describing the claims asserted in the original complaint and advising potential class members that they had 60 days within which to move to serve as lead plaintiff.[1]  By order dated May 22, 2006, this court consolidated this action with *Chi,* appointed the Laborers District Council Construction Industry Pension Fund as lead plaintiff, and approved the Lerach Coughlin firm as lead class counsel. (Doc. #22)[2]

---

[1]15 U.S.C. § 77z-1(a)(1)(3)(I) states: Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class – (I) of the pendency of the action, the claims asserted therein, and the purported class period and (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

[2]The Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. §§ 78u-4 *et seq.*, passed in 1995, provides that the court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most

On July 20, 2006, plaintiffs filed their Consolidated Amended Complaint ("CAC") against all defendants.  (Doc. #27)

On July 27, 2006 -- one week after the CAC was filed -- Omnicare disclosed that its profits fell 51% after losing $18.3 million as a result of the decision by UnitedHealthGroup ("UHG") to switch its Medicare Part D contracts with Omnicare to less favorable "any willing provider" contracts held through a newly-acquired UHG subsidiary.[3]

On October 31, 2006, plaintiffs filed a motion for leave to file a first amended consolidated complaint.  Through the proposed amendment, plaintiffs sought to: (1) extend the Class Period from an end date of January 27, 2006 to an end date of July 27, 2006; (2) add claims against new defendants Sandra Laney and Edward Hutton for § 10(b) violations; and (3) add a new plaintiff to assert claims against all defendants for violation of § 11 of the Securities Act of 1933 for allegedly false statements made in an SEC filing on November 23, 2005.

---

capable of adequately representing the interests of class members . . . in accordance with this subparagraph."  15 U.S.C. § 78u-4(a)(3)(B)(I).  The PSLRA further states that the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."  15 U.S.C. § 78u-4(a)(3)(B)(v).

[3]The dispute between Omnicare and UHG over the Medicare Part D contract was the subject of the suit in *Omnicare, Inc. v. UnitedHealth Group, Inc., et al.*, Cov. Civil Action No. 06-103, which has been transferred to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a).

Following a hearing, the court granted the motion to amend the complaint, and plaintiffs filed their amended complaint.  The amended complaint purports to bring claims on behalf of all persons who purchased publicly traded shares of Omnicare from August 3, 2005 to July 27, 2006 (the "Class Period").  (Doc. #52, First Amended Consolidated Complaint for Violation of the Federal Securities Laws, ¶ 1)

Plaintiffs allege that defendants made false and misleading statements or omissions that fall into four general categories:

(1)  Omnicare falsely represented that it abided by all applicable federal and state laws and regulations regarding its practices concerning unused drugs.  (Am. Compl. ¶¶ 13-14);

(2)  Omnicare issued false financial statements in 2005 and 2006 which were based on financial practices which failed to comply with Generally Accepted Accounting Principles ("GAAP").  (Am. Compl. ¶¶ 49-55, 67-72, 99-105, 109-115);

(3)  Omnicare failed to disclose in a timely manner its contract dispute with UHG, which ultimately caused Omnicare to post a 51% decline in profits for second quarter 2006. (Am. Compl. ¶¶ 29, 97-98, 125); and

(4)  Omnicare made false and misleading statements regarding its transition to the Medicare Part D program.  (Am. Compl. ¶¶ 58-62, 75-78).

For their § 11 claim, plaintiffs allege that the same GAAP violations discussed in conjunction with their § 10(b) claim rendered false and misleading Omnicare's prospectus that was issued in conjunction with its December 15, 2005 public offering. (Am. Compl. ¶¶ 117-118)

Defendants filed a motion to dismiss the amended complaint,

4

and that motion was fully briefed and then argued on August 2, 2007. Shortly before that hearing, plaintiffs filed a motion to add a new named plaintiff. (Doc. #76) Because that motion was not ripe at the time of the hearing, the court deferred ruling on all motions pending completion of briefing. (*See* Doc. #84)

All briefing having now been completed, and the court finding that no further oral argument is necessary, the court issues the following memorandum opinion and order.

### *Analysis*

**A.   Legal Standards**

Plaintiffs' allegations of securities fraud arise under Sections 10(b)[4] of the Securities Exchange Act (Security Act) and Rule 10b-5[5] promulgated thereunder.

_____

[4]Section 10 (b) of the Securities Act prohibits the use "in connection with the purchase or sale of any security . . . [of] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe . . .." 15 U.S.C. § 78j. This claim is directed at all defendants.

[5]Rule 10b-5 was promulgated in connection with Section 10(b) and states:
 It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
 (a) To employ any device, scheme, or artifice to defraud,
 (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
 (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

Section 10(b) and Rule 10b-5 prohibit "'fraudulent, material misstatements or omissions in connection with the sale or purchase of a security.'" *Miller v. Champion Enterprises, Inc.*, 346 F.3d 660, 661 (6th Cir. 2003) (quoting *Morse v. McWhorter*, 290 F. 3d 795 (6th Cir. 2002)).  The basic elements of this cause of action are:

> (1)  a material misrepresentation or omission;
>
> (2)  scienter, i.e., a wrongful state of mind;
>
> (3)  a connection with the purchase or sale of a security;
>
> (4)  reliance;
>
> (5)  economic loss; and
>
> (6)  "loss causation," i.e., a causal connection between the material misrepresentation and the loss.

*Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005) (citations omitted).[6]

In 1995, Congress passed the PSLRA in an effort to prevent abuse of the securities laws by private litigants.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.* 127 S. Ct. 2499, 2504 (2007). Among other things, the PSLRA created a heightened pleading

---

17 C.F.R. § 240.10b-5.

[6]Plaintiff Cement Masons also alleges a claim under Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k, for allegedly false statements made in Omnicare's Registration Statement dated November 23, 2005, which was used in conjunction with the December 12, 2005 public offering in which the Cement Masons purchased shares.

standard for securities fraud cases.  Specifically, a plaintiff now must (1) specify each statement alleged to have been misleading and the reason or reasons why the statement is misleading; and (2) "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. §§ 78u-4(b)(1), (2).  The PSLRA provides that if a plaintiff does not meet this requirement, a court shall, on any defendant's motion, dismiss the complaint. 15 U.S.C. § 78u-4(b)(3).

The Supreme Court has defined "scienter" as "a mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n. 12 (1976).  In securities fraud claims based on statements of present or historical fact, scienter consists of knowledge or recklessness. *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 681 (6th Cir. 2004) (citation omitted).  As the Sixth Circuit recently stated, scienter

> is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it.

*Brown v. Earthboard Sports USA, Inc.*, 481 F.3d 901, 917-18 (6th Cir. 2007) (citation omitted).

The Supreme Court also recently considered whether, and to

what extent, a trial court must consider competing inferences in determining whether a securities fraud complaint gives rise to a "strong" inference of scienter as required by the PSLRA. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.* 127 S. Ct. 2499 (2007).  After reviewing the history of the PSLRA, the Court established the following analytical framework for courts reviewing motions to dismiss securities fraud complaints:

> *First*, faced with a Rule 12(b)(6) motion to dismiss a § 10(b) action, courts must, as with any motion to dismiss for failure to plead a claim on which relief can be granted, accept all factual allegations in the complaint as true.   . . .
>
> *Second*, courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.   . . . The inquiry, as several Courts of Appeals have recognized, is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard.   . . .
>
> <u>*Third*, in determining whether the pleaded facts give rise to a "strong" inference of scienter, the court must take into account plausible opposing inferences.   . . .  Congress did not merely require plaintiffs to provide a factual basis for [their] scienter allegations . . ., *i.e.*, to allege facts from which an inference of scienter rationally *could* be drawn.  Instead, Congress required plaintiffs to plead with particularity facts that give rise to a "strong" – *i.e.*, a powerful or cogent – inference.</u>

*Id.* at 2509-10 (italics in original; underlining added) (citations omitted).

The Court then instructed courts how to weigh competing inferences from the face of a securities fraud complaint and how

8

to determine whether the inference of scienter meets the pleading standard set by the PSLRA:

> The strength of an inference cannot be decided in a vacuum. The inquiry is inherently comparative: How likely is it that one conclusion, as compared to others, follows from the underlying facts?  To determine whether the plaintiff has alleged facts that give rise to the requisite "strong inference" of scienter, a court must consider plausible nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff.  The inference that the defendant acted with scienter need not be irrefutable, *i.e.,* of the "smoking-gun" genre, or even the "most plausible of competing inferences . . ."  <u>Yet the inference of scienter must be more than merely "reasonable" or "permissible" – it must be cogent and compelling, thus strong in light of other explanations.  A complaint will survive, we hold, only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.</u>

*Id.* at 2510 (emphasis added) (citations omitted).

### B.   Application of These Standards to the Amended Complaint: Statement-by-Statement Analysis

#### 1.   Statements Regarding Medicare Part D Transition

The PSLRA codifies the requirement that a securities fraud plaintiff prove that a defendant's securities fraud caused their economic loss.  In pertinent part, the statute states:

> Loss causation.  In any private action arising under this chapter, the plaintiff shall have the burden of proving that the act or omission of the defendant alleged to violate this chapter caused the loss for which the plaintiff seeks to recover damages.

15 U.S.C. § 78u-4(b)(4).

The loss causation requirement forces a plaintiff to tie particular losses directly to specific alleged misconduct and,

9

thus, the concept is akin to proximate cause in tort law to protect securities fraud defendants from assuming the role of insurer for all investment losses. *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345-47 (2005).

In *Dura*, the Supreme Court held that securities fraud plaintiffs must plead and prove that they suffered a loss caused by a drop in the defendant's stock price, and that the drop in price resulted from the disclosure to the market of facts which reveal that prior statements or omissions by the defendant were false or misleading. *Id.* It is not sufficient, said the Court, that plaintiffs merely allege that they purchased stock at a price that was inflated due to defendant's misrepresentations or omissions. *Id.* Instead, plaintiffs must plead their economic loss and the causal connection between the misrepresentation and the drop in stock price. *Id.* *See also id.* at 343 (noting that to "touch upon" a loss is not to *cause* a loss, and it is the latter that the law requires") (italics in original).

Applying *Duro*, the Sixth Circuit has held that a complaint fails to plead loss causation if the plaintiffs fail to plead facts connecting "the alleged fraud with the ultimate disclosure and loss." *D.E. & J. Ltd. P'ship v. Conaway*, 133 Fed. Appx. 994, 1000 (6th Cir. 2005).

Here, plaintiffs fail to state a securities fraud claim premised on Omnicare's allegedly false statements regarding the

10

company's implementation of the new Medicare Part D program because they do not allege a loss proximately caused by any revelation or disclosure of the true facts regarding the same.

The amended complaint alleges that in August and November 2005, defendant Gemunder, Omnicare's CEO, stated that Omnicare believed it was well-positioned to add value under Part D; that the company had been very busy working with potential PDPs to educate them about Omnicare's long-term care facilities; that the company was "pretty confident" that it would not be hurt by the Part D structure; that Omnicare was "upbeat" about the implementation of Part D; that it had been focused on training employees about Part D; and that its billing system was prepared for the adjustments associated with the new program.  (Am. Compl. ¶¶ 58-62, 75-78)

Plaintiffs further allege that these statements caused the price of Omnicare's stock to be artificially inflated (Am. Compl. ¶¶ 62, 78), and that the statements were false and misleading because, in fact, Omnicare was not monitoring key developments regarding Part D, its beneficiary database was deficient, and it was not adequately educating PDPs or training Omnicare employees regarding Part D.  (Am. Compl. ¶¶ 61, 77)

However, plaintiffs do not allege that there was any subsequent disclosure about Omnicare's transition to Medicare Part D that revealed the falsity of its previous statements or

that caused a drop in Omnicare's stock price.  They allege only that Omnicare experienced operational difficulties -- that the transition was a "colossal failure" -- because the company was not well-prepared.  (Am Compl. ¶¶ 61, 77)  However, the amended complaint makes no factual allegations that these difficulties became known to the market or that they caused Omnicare's stock price to fall.

The only "disclosures" that the complaint does allege have nothing to do with Omnicare's transition to Medicare Part D.[7] The amended complaint alleges that "partial disclosures" occurred in January 2006 when the company announced that it had received a subpoena from the Unites States Attorney in Massachusetts and that it was under investigation by federal and state authorities in connection with its substitution of certain forms or doses of generic drugs, and when some of its offices were searched by state authorities in connection with investigations into Medicare fraud.  (Am. Compl. ¶¶ 83-94)

Further, in the section of the Amended Complaint titled "The

---

[7]Many of these disclosures occurred <u>after</u> the named plaintiffs sold all of their Omnicare stock.  Defendants argue that plaintiffs thus lack standing to assert a securities fraud claim based on these disclosures.  As to the Medicare Part D statements, the court need not reach this argument because the disclosures, as discussed below, have no causal connection to the Medicare Part D statements.  The question of standing will be addressed later, however, with the respect to the allegedly actionable statements and omissions regarding Omnicare's dispute with UHG.

Truth About Defendants' Fraud Emerges," plaintiffs allege that Omnicare's stock price was negatively affected by the following: (1) an announcement in May 2006 that the company was establishing settlement reserves in connection with the previously-announced government inquiries into the alleged improper generic drug substitution (Am. Compl. ¶¶ 119-121); (2) an announcement in May 2006 that Omnicare had filed suit against UHG over the UHG/PacifiCare contract dispute (Am. Compl. ¶¶ 122-123); (3) an announcement in July 2006 that, as a result of UHG's shift of the PacifiCare contracts, Omnicare's profits dropped $18.3 million (Am. Compl. ¶¶ 125-129); (4) an announcement in August 2006 of a special litigation charge of $22 million in relation to the Michigan Medicare fraud investigation (Am. Compl. ¶ 130); and (5) an announcement on August 16, 2006 that the Michigan Attorney General had filed criminal charges of Medicare fraud and racketeering against the president of an Omnicare subsidiary (Am. Compl. ¶¶ 131-136).

Despite the detail with which plaintiffs describe these matters, none of these alleged disclosures has anything to do substantively with Omnicare's transition to the Medicare Part D program or its allegedly false statements regarding its efforts to prepare for that program.

Therefore, because plaintiffs plead no disclosure of facts that revealed the falsity of Omnicare's statements concerning

13

Medicare Part D, and thus no causal connection between these statements and any subsequent drop in Omnicare's stock price, these alleged misrepresentations cannot form the basis of plaintiffs' securities fraud claim. *See D.E. & J. Ltd. P'ship v. Conaway*, 133 Fed. Appx. 994, 1000 (6th Cir. 2005) (holding that investors failed to state loss causation element of fraud claim because bankruptcy filing, which was the alleged "disclosure," did not disclose the prior alleged misrepresentations); *In re: The Goodyear Tire & Rubber Co. Sec. Litig.*, 436 F. Supp.2d 873, 893 (N.D. Ohio 2006) (plaintiffs failed to plead "nexus" between admissions of accounting irregularities and allegedly false statements); *In Re Compuware Sec. Litig.*, 386 F. Supp.2d 913, 918-19 (E.D. Mich. 2005) (announcement was not corrective disclosure because it did not reveal facts showing falsity of alleged misrepresentations); *In re Avista Corp. Sec. Litig.*, 415 F. Supp.2d 1214, 1220-21 (E.D. Wash. 2005) (investors failed to plead loss causation because announcement of government investigations, although they caused stock price to plummet, did not disclose any facts relating to the company's alleged misrepresentations). *Cf. In re Bridgestone Sec. Litig.*, 430 F. Supp.2d 728, 736 (M.D. Tenn. 2006) (investors adequately plead loss causation because disclosures to market "directly contradicted" allegedly false statements; plaintiff "does connect the alleged fraud with the ultimate disclosure and loss").

In *Glaser v. Enzo Biochem, Inc.*, 464 F.3d 474 (4th Cir. 2006), *cert. denied*, 127 S. Ct. 1876 (2007), the Fourth Circuit affirmed the dismissal of a fraud claim for failure to plead loss causation, explaining:

> <u>It is only after the fraudulent conduct is disclosed to the investing public, followed by a drop in the value of the stock, that the hypothetical investor has suffered a "loss" that is actionable after the Supreme Court's decision in *Dura.*</u>  In other words, so long as the fraud is undisclosed, normal fluctuations in price attendant to any market may have a direct effect on the value of the investor's portfolio, but cannot be said to be a "loss" that is actionable under the federal securities laws . . .
>
> *Dura* makes clear that plaintiffs' damages theory -- one that relies on the inflated purchase price theory of causation -- cannot be sustained.  <u>While plaintiffs repeat throughout their complaint that they were "fraudulently induced to invest in and retain common shares of Enzo at artificially inflated prices" . . ., they make no effort to link the drop in stock price to any revelation of the true facts behind any alleged misrepresentations by defendants, let alone to one of the eight actionable alleged misrepresentations remaining after this Court's prior opinion.  Plaintiffs must have pled an actual causal connection between the alleged misrepresentations and a subsequent decline in Enzo's stock.</u>

*Id.* at 479 (emphasis added).

For these reasons, the amended complaint fails to state a securities fraud claim based on Omnicare's allegedly false statements concerning the Medicare Part D program.

### 2.   <u>False Financial Statements</u>

Plaintiffs' attempt to state a securities fraud claim premised on allegedly false financial statements and related accounting irregularities fails for the same reason.  That is, the Amended Complaint fails to allege that the falsity of these

financial statements was ever revealed or that any such revelation caused Omnicare's stock price to drop and harm plaintiffs.

The amended complaint alleges that Omnicare engaged in a variety of alleged violations of Generally Accepted Accounting Principles ("GAAP") and other accounting irregularities, including: improper revenue recognition; overvaluation of receivables; overvaluation of inventory; failing to make proper reservations for contingent liabilities such as litigation expenses; and failing to write off doubtful receivables. (Am. Compl. ¶¶ 5-9, 55, 72, 105, 115) Plaintiffs further allege that these accounting violations enabled Omnicare to report higher earnings and thereby caused its stock price to be artificially inflated. (Am. Compl. ¶¶ 7, 12, 56, 73, 106, 116)

But there the allegations with respect to accounting violations end. Plaintiffs do not allege facts that would establish that the truth about these alleged accounting violations was ever revealed or disclosed to the market so as to cause a corresponding drop in Omnicare's stock price which harmed plaintiffs. As noted above, plaintiffs recite a number of alleged "disclosures," but none of them relate to accounting violations. Indeed, defendants note -- and plaintiffs do not dispute -- that Omnicare has never restated the challenged earnings reports, nor has it been required to correct any of its

financial reports or filings because of these alleged accounting irregularities.  Moreover, Omnicare's independent auditors certified throughout the class period that the company's financial statements were "fairly presented" in accordance with GAAP.

Therefore, because the mere allegation that false financial statements caused Omnicare's stock price to be artificially inflated, and that plaintiffs bought shares at that inflated price, is insufficient to allege a securities fraud claim under *Dura* and its progeny, plaintiffs' claim premised upon these allegedly false financial statements fails at the pleading stage.[8]

### 3.   **Statements/Omissions Regarding the UHG Contract Dispute**

The third category of misrepresentations or omissions upon which plaintiffs base their securities fraud claim relates to Omnicare's contract with UHG for the provision of prescription drugs to Medicare beneficiaries under the new Part D plan which went into effect at the beginning of 2006.

Specifically, plaintiffs allege that, in February 2006, Omnicare failed to disclose that UHG had notified Omnicare that UHG was withdrawing its Medicare Part D contracts from Omnicare

---

[8]The Section 11 claim, which also sounds in fraud and is based on the alleged accounting violations, fails on the same grounds.

and switching them to less favorable "any willing provider" contracts through a newly-acquired subsidiary, PacifiCare.  (Am. Compl. 22-26, 97)  Because this switch would enable UHG to pay considerably less for the prescription drugs that UHG purchased from Omnicare, plaintiffs allege that it was sure to drastically reduce Omnicare's expected income and that the company therefore had a duty to disclose this development to the investing public. (*Id.*)  Plaintiffs allege that Omnicare did not reveal this development, thereby allowing its stock price to rise nearly 20% during February 2006.  (Am. Compl. ¶¶ 98(c), 108)

Plaintiffs further allege that Omnicare did not disclose the UHG "bombshell" until May 18, 2006, when Omnicare filed suit against UHG and PacifiCare, and that, upon this announcement, Omnicare's stock dropped approximately $4 per share.  (Am. Compl. ¶¶ 29, 122-23)  Plaintiffs further allege that the "full extent" of the impact of the UHG contract reformation was not revealed until July 27, 2006, when Omnicare announced that its profits had fallen 51% after losing $18.3 million as a result of UHG's switch.  (*Id.*)  This announcement caused Omnicare's stock to drop another $4 per share.  (*Id.*)

As previously noted, however, the plaintiffs currently named in the Amended Complaint sold all of their Omnicare stock on

18

January 30 and 31, 2006.⁹  (*See* Certificates of Laborers District Council and Cement Masons Local, attached to amended complaint) Thus, these plaintiffs had already bought <u>and</u> sold all their Omnicare stock before the alleged omission even occurred, much less before its revelation is alleged to have negatively impacted Omnicare's stock price.  As a matter of "pure logic" therefore, plaintiffs could have suffered no loss on account of this alleged omission.  *See Dura*, 544 U.S. at 342 (noting that if purchaser sells its shares "before the relevant truth begins to leak out, the misrepresentation will not have led to any loss").  This conclusion is also a logical extension of the Sixth Circuit's discussion of loss causation in *D.E. & J. Ltd. P'ship v. Conaway*, 133 Fed. Appx. 994 (6th Cir. 2005).  *See id.* at 1000 (to survive motion to dismiss, plaintiffs must plead that they suffered a loss due to a drop in stock price caused by disclosure of defendant's prior misrepresentation or omission).

Other courts have held that plaintiffs cannot plead a securities fraud claim where they purchased and/or sold their stock before the alleged fraud and its disclosure occurred.  *See Roots P'ship v. Land's End, Inc.*, 965 F.2d 1411, 1420 (7th Cir. 1992) ("Such post-purchase statements cannot form the basis of Rule 10b-5 liability, because the statements could not have

---

⁹Plaintiffs' motion to add a new named plaintiff who purchased shares of Omnicare stock after January 2006 is addressed in Section D.

19

affected the price at which plaintiff actually purchased."); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825, 2007 WL 680779, at *4 (E.D.N.Y. Mar. 2, 2007) (holding that "any losses that [plaintiff] may have incurred before [defendant's] misconduct was ever disclosed to the public are not recoverable, because those losses cannot be proximately linked to the misconduct at issue in this litigation"); *In re Compuware Sec. Litig.*, 386 F. Supp.2d 913, 920 (E.D. Mich. 2005) (plaintiff cannot state securities fraud claim because it "traded out of Defendant's stock long before the alleged inflated price began to leak out of Defendant's stock price"); *Davis v. SPSS, Inc.*, 385 F. Supp.2d 697, 705-06 (N.D. Ill. 2005) (investor lacked standing to pursue securities fraud claim to the extent claims were based on statements made after investor acquired shares).

Plaintiffs respond to this problem by arguing that a lead plaintiff need not have standing on all claims in a securities fraud case. The cases they cite, however, make this observation in the context of analyzing whether a particular lead plaintiff satisfies the requirements for serving as class representative or whether the Rule 23 "typicality" requirement is met, not whether the complaint itself states a claim. *See Hevesi v. Citigroup, Inc.*, 366 F.3d 70, 82 (2d Cir. 2004) (challenge to class representative); *In re: The Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 311 (3d Cir. 1998) (typicality

20

analysis).  *But see Roots*, 965 F.2d at 1420 n. 6.

In fact, the Supreme Court has stated that named plaintiffs who represent a class "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and purport to represent."  *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (citation omitted).

Therefore, because these plaintiffs sold their Omnicare stock before Omnicare allegedly fraudulently failed to disclose the UHG contract dispute –– and because such alleged fraud could thus have caused no harm to plaintiffs –– the amended complaint fails to state a securities fraud claim premised on this omission.

### 4.   **Statements That Omnicare "Abides By the Law"**

The final statements upon which plaintiffs attempt to base their securities fraud claims are the following:

(1)   A statement contained in an article in *TheStreet.com* dated September 8, 2005 that Omnicare "abides by state laws and all applicable board of pharmacy regulations."  (Am. Compl. ¶¶ 13, 54); and

(2)   A November 7, 2005 press release in which Omnicare stated: "Omnicare's policy is to comply with all applicable federal and state laws and regulations.  To the best of our knowledge, our purchases of pharmaceuticals comply with all applicable laws and regulations and are consistent with Omnicare's goal of providing appropriate pharmaceutical care cost-effectively for the seniors we serve."  (Am. Compl. ¶¶ 14, 69)

Plaintiffs allege that these statements were false when made

because Omnicare was actually engaged in the illegal recycling of unused drugs and improper drug substitution.  However, plaintiffs' effort to premise their fraud claim on these two generalized statements fails.

First, the Sixth Circuit and other courts have held that a company has no duty to disclose "soft" information, including the company's belief as to the legality of its own actions.  *See In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400-01 (6th Cir. 1997); *Kushner v. Beverly Enter., Inc.*, 317 F.3d 820, 831 (8th Cir. 2003).  Other courts have held similarly that the securities law does not require a company to accuse itself of wrongdoing.  *See Iron Workers Local 16 Pension Fund v. HILB Rogal & Hobbs Co.*, 432 F. Supp.2d 571, 586-87 (E.D. Va. 2006).

In *Sofamor*, investors alleged that the defendant's statements advising the public of its record revenues and positive earnings were deceptive and misleading because the company knew that it was illegally promoting certain of its surgical products for uses not approved by the Food and Drug Administration and because it was engaged in other illegal conduct.  *Sofamor*, 123 F.3d at 399.  The plaintiffs alleged that the company's failure to disclose these illegal practices rendered the statements misleading and constituted securities fraud.

The district court rejected this argument and granted

22

defendants' motion to dismiss.  The Sixth Circuit affirmed, holding that the proposition that the company was engaged in illegal activities "is not a proposition that can fairly be said to fall in the category of 'hard' information."  *Id.* at 401.  Rather, the legality of a company's activities is a matter of opinion, which is "soft" information to which no duty of disclosure attaches.  *Id.* at 402.

Under this authority, therefore, Omnicare had no duty to announce to the public that it believed it was engaged in illegal activity.

Second, plaintiffs do not plead facts which support an inference that defendants knew these two statements to be false at the time they were made.  The first statement is contained in an online article concerning a lawsuit brought against a company, NCS HealthCare, which Omnicare had acquired.  (Robinson Decl. Exh. H)  The lawsuit alleged that NCS had mishandled drugs, but such actions were alleged to have occurred before NCS was acquired by Omnicare.  Apparently questioned about this matter, Omnicare is quoted as follows: "For its part, Omnicare says that it 'abides by state laws and all applicable board of pharmacy regulation' when dealing with unused drugs.  As a matter of policy, the company does not comment on litigation."  (*Id.*)

Plaintiffs allege that this statement, as well as the November 7, 2005 press release, was misleading based on

23

allegations by a confidential witness, CW2.  (Am. Compl. ¶¶ 55(b)(I), 72(b)(I))  CW2, described only as a former Purchasing Manager, alleges that drugs that were returned to an Omnicare facility were improperly commingled with other drugs with varying expiration dates.  (*Id.*)  The amended complaint states: "This practice was also corroborated by CW3, a former Inventory Control and Demand Forecast Manager."  (*Id.*)

These allegations provide no basis from which to draw a strong inference that defendants knew the above statements to be false.  First, the complaint does not actually allege that CW2 personally observed these practices, nor does it describe CW2 with sufficient particularity to determine even when and where he or she worked for Omnicare.  While confidential informants need not be named, the complaint must at least allege sufficient detail to support the probability that they would have relevant information concerning defendants' action.  *Compare Davis v. SPSS, Inc.*, 385 F. Supp.2d 697, 710 (N.D. Ill. 2005) (complaint which stated the confidential witnesses' positions, terms of employment, and locations gave sufficient information) *with In re: Keithley Instruments, Inc. Sec. Litig.*, 268 F. Supp.2d 887, 898-99 (N.D. Ohio 2002) (allegations by confidential witnesses lacked sufficient specificity because they gave no identifying information about the matters alleged).  *See also City of Austin Police Ret. Sys. v. ITT Educ. Serv., Inc.*, 388 F. Supp.2d 932,

942-43 (S.D. Ind. 2005) (descriptions of confidential witnesses lacked sufficient facts such as when they were employed or when they acquired information they claimed to possess).   Thus, as defendants point out, CW2 could be merely a former employee of NCS who was terminated when Omnicare acquired it.

More importantly, there are no facts alleged from which one could reasonably infer that defendants were aware of the alleged improper commingling of drugs at the time the allegedly false statement was made.   Thus, even if one accepts CW2's allegations, plaintiffs still fail to plead particularized facts showing that defendants were aware of any such improprieties.   "Without that support, the allegation of wrongdoing at some local institutes, even in the core business, does not support an inference of scienter on the part of senior management and the corporation itself."   *Id.* at 949.

In *Kushner v. Beverly Enter., Inc.*, 317 F.3d 820 (8th Cir. 2003), the court stated:

> Without allegations of particular facts demonstrating how
> the defendants knew of the scheme at the time they made
> their statements of compliance, that they knew the financial
> statements overrepresented the company's true earnings, or
> that they were aware of a GAAP violation and disregarded it,
> a showing in hindsight that the statements were false does
> not demonstrate fraudulent intent.   Mere allegations of
> fraud are insufficient.

*Id.* at 827 (internal quotations and citations omitted).   *See also In re Ferro Corp.*, Nos. 1:04CV1440, 1:04CV1589, 2007 WL 1691358, at *13 (N.D. Ohio June 11, 2007) (although it was undisputed that

25

employee committed fraud, plaintiff failed to sufficiently plead facts showing that defendant had knowledge of fraud; "grossly conclusory" allegations are insufficient under PSLRA).

The Seventh Circuit recently addressed similar flaws in affirming the dismissal of a securities fraud complaint under the PSLRA. *See Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 757-58 (7th Cir. 2007).

For these reasons, the amended complaint fails to state a claim based on these allegedly misleading statements.[10]

### C. <u>Control Person Liability (§ 20(a))</u>

Plaintiffs also seek to hold defendants Gemunder, Froesel and Hodges liable as "controlling persons" of Omnicare under § 20(a) of the Exchange Act. However, "controlling person" liability is derivative, and a plaintiff "may hold a defendant liable under this theory only if the defendant controlled an entity that violated the Securities Act." *D.E. & J. Ltd. P'ship v. Conaway*, 133 Fed. Appx. 994, 1001 (6th Cir. 2005). Thus, because plaintiffs fail to state a claim for securities fraud, their § 20(a) claim fails as well. *Id.*

---

[10]In addition, defendants argue that there were never any "corrective disclosures" in connection with these statements because the later government investigations and settlements did not concern improper drug commingling, but rather they related to alleged improper drug <u>substitution</u> and unrelated Medicare billing issues. While defendants appear to be correct on this point, the court need not reach this issue given that the claim fails for the independent reasons already discussed.

D.    **Motion to Add Additional Named Plaintiff**

Four business days before the scheduled hearing on defendants' motion to dismiss, plaintiffs filed a motion seeking to amend the complaint to add a new named plaintiff, Alaska Electrical Pension Fund.  (Doc. #76)  This motion must denied for at least two reasons.

First, the Sixth Circuit has interpreted the PSLRA as limiting the scope of Rule 15(a) and restricting the otherwise liberal policy of allowing pleading amendments.  *See Miller v. Champion Enter., Inc.*, 346 F.3d 660, 689-92 (6th Cir. 2003).  *See also id.* at 690 ("The district court also correctly held that allowing repeated filing of amended complaints would frustrate the purpose of the PSLRA."); *Fidel v. Farley*, 392 F.3d 220, 236 (6th Cir. 2004) (same);  *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 699-700 (6th Cir. 2004) (same); *Stambaugh v. Corrpro Co.*, 116 Fed. Appx. 592, 598 (6th Cir. 2004).

Since the filing of this case in February 2006, plaintiffs have twice amended their complaint, adding two new plaintiffs, two defendants, and an additional cause of action.  In recognition of the above authority, the court stated in its order permitting the most recent amendment in January 2007: "[T]he court will not allow further amendments of the complaint based on events to date absent exceptional circumstances."  (Doc. #51)

Plaintiffs' attempt to amend their complaint yet again -- in

27

an effort to address a fatal defect raised in a motion to dismiss
-- directly implicates "the underlying concern of the PSLRA that
plaintiffs should not be permitted to continue to attempt to
craft viable securities complaints after defendants have
challenged their deficiencies through motions to dismiss." (*Id.*)

Second, the amendment would be futile. Even assuming that
Alaska Electrical would have standing with respect to the claim
based on the UHG contract dispute, that claim would still be
subject to dismissal because plaintiffs' allegations on the whole
fall well below the standard for alleging scienter set forth in
*Tellabs*.

Viewed in their totality, plaintiffs' allegations do not
give rise to a "cogent" inference that defendants had an intent
to deceive, manipulate, or defraud investors. The allegations
concerning defendants' positions within Omnicare, alleged insider
trading by two defendants, alleged accounting irregularities, and
self-interested motives lack the factual particularity that would
support an inference of fraudulent intent that is "at least as
compelling as any opposing inference." *Tellabs, Inc. v. Makor
Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2510 (2007). *See
generally PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 684-93
(6th Cir. 2004) (summarizing similar scienter allegations and
finding them insufficient to survive motion to dismiss).

Instead, plaintiffs appear to have attempted to "reverse

28

engineer" a securities fraud action based on bad corporate news. Stated differently, there can be no "fraud by hindsight," and the complaint is subject to dismissal on this additional basis. Addition of the proposed new plaintiff would do nothing to cure this defect.

Therefore, having reviewed this matter, and the court being otherwise sufficiently advised,

**IT IS ORDERED** that: (1) defendants' motion to dismiss (Doc. #59) be, and is hereby, **GRANTED**; (2) plaintiffs' motion to add an additional named plaintiff (Doc. #76) be, and is hereby, **DENIED**; and defendants' motion for leave to file a surreply (Doc. #89) be, and is hereby, **DENIED AS MOOT**.  A separate judgment shall enter concurrently herewith.

This 12th day of October, 2007.



**Signed By:**

**_William O. Bertelsman_**  WOB

**United States District Judge**