UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON


CIVIL ACTION NO. 2006-26 (WOB)

INDIANA STATE DISTRICT
COUNCIL OF LABORERS
AND HOD CARRIERS PENSION
AND WELFARE FUND, ET AL.                        PLAINTIFFS

VS.              <u>MEMORANDUM OPINION AND ORDER</u>

OMNICARE, INC.,
ET AL.                                          DEFENDANTS


    This matter is before the Court on defendants' motion
to dismiss plaintiffs' Third Amended Complaint (Doc. 138).

    Having previously heard oral argument on this motion,
the Court now issues the following Memorandum Opinion and
Order.

### Background

    The lengthy factual background to this case may be
found in a prior opinion of the United States Court of
Appeals for the Sixth Circuit, as well this Court's opinion
from which that appeal arose.  *Indiana State Dist. Council
of Laborers and HOD Carriers Pension and Welfare Fund v.
Omnicare, Inc.*, 583 F.3d 935 (6th Cir. 2009); *Indiana State
Dist. Council of Laborers and HOD Carriers Pension and
Welfare Fund v. Omnicare, Inc.*, 527 F. Supp.2d 698 (E.D.
Ky. 2007).

For present purposes, it suffices to repeat that
Defendant Omnicare, Inc. is a provider of pharmaceutical
care services to residents of long-term care facilities in
the United States and Canada.  Defendant Gemunder was
Omnicare's CEO; defendant Froesel was its CFO and a Senior
Vice-President; defendant Hodges was its Secretary and a
Senior Vice-President; defendant Hutton was Chairman of the
Omnicare Board of Directors;[1] and defendant Laney was a
Director.

On December 15, 2005, Omnicare completed a public
offering of 12.8 million shares of common stock, in
conjunction with which the company made certain filings
with the Securities and Exchange Commission in August and
November 2005, which were incorporated into a Registration
Statement and Prospectus.  (Third Amended Complaint ("TAC")
¶ 23).

Plaintiffs purchased stock through this public
offering.  (TAC ¶ 184).  However, plaintiffs held that
stock for only a short time, selling all of it by January
31, 2006.  (Doc. 16-4 at 4; Doc. 52-2 at 3).

---

[1]Defendants state that Mr. Hutton passed away while
this case was on appeal to the Sixth Circuit.

A.   __Procedural History of the Case__

A review of the procedural history of the case is helpful to understand the issues now before the Court.

This case was filed on February 2, 2006, as a putative securities class action alleging claims for violations of § 10(b) and § 20(a) of the Securities Exchange Act of 1934. Plaintiffs alleged generally that defendants engaged in a fraudulent scheme that artificially inflated Omnicare's stock price by misrepresenting the company's financial results and business practices.

Following various preliminary matters, plaintiffs moved for leave to amend their complaint to add, as relevant here, an additional plaintiff (Cement Masons pension funds), asserting a claim for violation of § 11 of the Securities Act of 1933 based on allegedly false statements made in the Registration Statement issued in conjunction with the December 15, 2005, public offering. The court granted plaintiffs' motion to amend their complaint.[2]

_____

[2]Because plaintiffs had previously filed an amended complaint styled as a Consolidated Amended Complaint (Doc. 27), what was labeled the "First Amended Complaint" was actually the *second* amendment to the pleadings.  This accounts for the fact that plaintiffs continue to label the present incarnation of their complaint the "Second Amended Consolidated Complaint" when it is, in fact, a Third Amended Complaint, which label the Court uses herein.

Defendants moved to dismiss the amended complaint on various grounds. In an Opinion and Order dated October 12, 2007, this Court granted defendants' motion to dismiss plaintiffs' complaint in its entirety. *Indiana State Dist. Council of Laborers and HOD Carriers Pension and Welfare Fund v. Omnicare, Inc.*, 527 F. Supp.2d 698 (E.D. Ky. 2007).

Plaintiffs appealed. (Doc. 95). On October 21, 2009, the Sixth Circuit issued an opinion affirming the dismissal of all claims, except the § 11 claim. *Indiana State Dist. Council of Laborers and HOD Carriers Pension and Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935 (6th Cir. 2009). The Sixth Circuit held that this Court had improperly dismissed the § 11 claim on the grounds that plaintiffs had not shown "loss causation" because such is not an element of a § 11 claim but rather is an affirmative defense thereto. *Id.* at 947.

Although the Sixth Circuit agreed with defendants that plaintiffs' § 11 claim sounds in fraud and is thus subject to Rule 9(b)'s heightened pleading requirements, the Court declined to reach defendants' alternative argument that the claim failed on that basis. *Id.* at 948. Instead, the Court stated that it would "leave the application of Rule 9(b)'s standards to the district court." *Id.*

After a stay during which plaintiffs pursued a petition for writ of certiorari, which they later dismissed, plaintiffs moved for leave to amend the complaint to replead the § 11 claim based on newly-discovered information, and the Court granted this motion on July 14, 2011.  (Doc. 133).  Defendants responded with the motion to dismiss which is now ready for resolution.

**B.   Facts Alleged in Third Amended Complaint**

As part of its Pharmacy Services Division, Omnicare provides consultant services in Long Term Care Facilities (LTCFs).  (TAC ¶ 3).  Plaintiffs allege that Omnicare utilized its pharmacy services to engage in extensive therapeutic interchange programs designed to market and sell high-profit drugs to LTCF patients.  (TAC ¶ 4). Further, "Omnicare often implemented such initiatives in order to effect kickback arrangements with pharmaceutical manufacturers, whereby the Company received rebates in exchange for promoting the manufacturers' drugs."  (*Id.*).

For the details of these alleged kickback schemes, plaintiffs cite to and incorporate allegations from whistleblower lawsuits filed against Omnicare, an investigation by the Department of Justice ("DOJ"), and a lawsuit against Johnson & Johnson filed by the DOJ and the United States Attorney's Office in Massachusetts.  (TAC ¶

6).  Plaintiffs allege that these and other schemes were "approved and implemented at Omnicare's highest levels of management."  (*Id.*).

In particular, plaintiffs allege that Omnicare and Johnson & Johnson developed a scheme to market the drug Risperdal to nursing home patients with dementia, which was an illegal "off-label" use because the drug had been approved by the FDA only for the treatment of schizophrenia.  (TAC ¶ 7).

Plaintiffs further allege that Omnicare "violated the Federal Anti-Kickback Statute by paying tens of millions of dollars to LTCFs in order to obtain or maintain pharmacy and services contracts with Omnicare."  (TAC ¶ 8).

Plaintiffs allege that, at the time of the December 2005 public offering which is the basis of their § 11 claim, investors were unaware of these illegal activities because Omnicare concealed the kickback schemes and stated that the therapeutic interchanges were meant to "provide [patients with] . . . more efficacious and/or safer drugs than those presently being prescribed" and that its contracts with drug companies were "legally and economically valid arrangements that bring value to the healthcare system and the patients that we serve."  (TAC ¶ 10).  Plaintiffs allege that these statements contained in

the Registration Statement were materially false and misleading.  (TAC ¶ 11).

Plaintiffs also allege that Omnicare failed to comply with Generally Accepted Accounting Principles ("GAAP") such that the financial statements filed in connection with the December 2005 public offering contained material misrepresentations and/or omissions.

*Analysis*

**A.   Section 11 of the Securities Act of 1933**

Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k, imposes liability on persons who sign securities registration statements containing untrue statements of material fact or omissions of material fact. *J & R Marketing, SEP v. General Motors Corp.*, 549 F.3d 384, 390 (6th Cir. 2008).

Although § 11 plaintiffs are not required to plead or prove that the defendant acted with scienter, where the underlying allegations regarding the alleged misrepresentations or omissions sound in fraud, the requirements of Rule 9(b) apply.  *Omnicare*, 583 F.3d at 948.[3]

---

[3]Because plaintiffs' allegations are clearly based on allegedly fraudulent and/or illegal activities, their attempted disavowal of any reliance on fraud in the TAC (TAC ¶ 178) is ineffective.  *See In re Axis Holdings Ltd.*

Rule 9(b) requires that a plaintiff "allege the time, place, and content of the alleged misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (citation omitted).

"Loss causation," which refers to the causal connection between the material misrepresentation or omission and plaintiff's loss, is not an element of a claim under § 11 of the Securities Act. *See Indiana State Dist. Council of Laborers and HOD Carriers Pension and Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935, 947 (6th Cir. 2009) (citing 15 U.S.C. § 77*l*(b)). Rather, loss causation is an affirmative defense to a § 11 claim. *Id.*

Defendants have moved to dismiss the TAC on both Rule 9(b) and loss causation grounds.

### B.   **GAAP-Based Statements/Omissions**

Plaintiffs allege that, due to certain improper accounting practices, the 2005 Prospectus and related SEC filings substantially overstated the company's revenue, operating income, and goodwill. (TAC ¶¶ 118-139). Thus, they allege, the statement that the filings contained no

---

*Sec. Litig.*, 456 F. Supp.2d 576, 597-98 (S.D.N.Y. 2006) (discussing numerous cases so holding).

untrue statement of material fact and fairly presented the financial condition of the company were false and materially misleading. (TAC ¶¶ 166-67).

As this Court previously noted, allegations of GAAP violations, standing alone, do not satisfy the particularity requirements of Rule 9(b). (Doc. 133 at 5 (citing *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1269 (11th Cir. 2006)). "Omnicare's auditors certified Omnicare's GAAP compliance with respect to the financial statements in issue, and Omnicare has never restated these financials." *Id.*

Plaintiffs' TAC details numerous accounting practices that they allege violated GAAP. (TAC ¶¶100-167). However, a close review of these densely-detailed paragraphs -- many of which simply incorporate allegations from other legal actions against Omnicare -- shows that plaintiffs allege no particularized facts showing that defendants knew or were reckless in regard to the fact that financial statements in question were compiled in violation of GAAP.[4]

For example, plaintiffs allege that Gemunder and Froesel were personally involved in one of the underlying transactions which plaintiffs allege was unlawful (TAC ¶¶

---

[4] In fact, the TAC contains not a single factual allegation specific to defendants Hodges, Hutton, and Laney.

9

118-128), but they do not allege that these defendants had any involvement with how that transaction was booked or how it was treated for accounting purposes.  The allegation that these defendants knew that the financial statements issued in connection with the December 2005 public offering were false or misleading thus requires an inference that lacks any alleged factual basis.

Plaintiffs also allege, based on information from a confidential informant ("CW2"), that Omnicare failed to adequately reserve for doubtful receivables and failed to write-off uncollectible receivables.  (TAC ¶¶ 145-146). Again, however, no allegations link these accounting deficiencies to knowledge on the part of the defendants as to the accuracy of the financial statements contained in the offering materials.[5]  The allegations from confidential witnesses CW3, CW4, CW5 (TAC ¶¶ 147-151) suffer from the same flaws.

Similarly, CW6's allegation that Froesel and Gemunder wanted the company's financial reporting to "look good, not

---

[5] The closest allegation is: "It was CW2's experience that defendant Gemunder and other senior management . . . denied write-offs" that would have been called for under GAAP. (TAC ¶ 145).  This is still vague, however, and it does not actually allege that Gemunder or anyone else knew such denials to be in violation of GAAP, much less that he knew that such denials resulted in false financial statements.

to make it accurate" lacks the specificity required by Rule 9(b) for a claim grounded in fraud.[6]

For these reasons, plaintiff's allegations of material misstatements or omissions in the 2005 offering documents based on GAAP violations do not satisfy the requirements of Rule 9(b).

C.   **Statements Regarding Legal Compliance**

Plaintiffs allege a second category of material misstatements/omissions in the December 2005 offering materials by way of statements that: Omnicare's therapeutic drug interchange programs were meant to provide patients with more efficacious or safer drugs; Omnicare's contracts with drug manufacturers were legally and economically valid and brought value to patients; and Omnicare believed that its contracts complied with federal and state laws. (TAC ¶¶ 10, 27, 46).

As both this Court and the Sixth Circuit have noted, statements regarding a company's belief as to its legal compliance are considered "soft" information and are

---

[6]The Court assumes for purposes of this discussion that these confidential witnesses are identified with sufficient detail.  However, it notes that plaintiffs' statement that the Court previously found similarly-described confidential witnesses to be reliable (Doc. 139 at 31) is incorrect.  In fact, the Court held the exact opposite.  *See Indiana State Dist. Council of Laborers and HOD Carriers Pension and Welfare Fund v. Omnicare, Inc.*, 527 F. Supp.2d 698, 710-11 (E.D. Ky. 2007).

generally not actionable.  *See Indiana State Dist. Council of Laborers and HOD Carriers Pension and Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935, 945 (6th Cir. 2009) (citing *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 401-02 (6th Cir. 1997)); *Omnicare*, 527 F. Supp.2d at 709-10.

Plaintiffs argue that this principle is inapplicable here because they allege that "defendants knew the statements were untrue at the time they were made." (Doc. 139 at 25).  In support of this assertion, plaintiffs again identify allegations concerning only two of the defendants: Froesel and Gemunder.

These allegations, taken as true, establish that these two defendants were involved in planning and implementing Omnicare's therapeutic drug interchange programs and did so with the goal of improving the company's profitability. This does not get plaintiffs very far.  Presumably all publicly-traded companies conduct their activities in order to be profitable.  That is a far cry, however, from inferring that the company's officers knew they were violating the law.

Plaintiffs further state in their brief that the TAC alleges that Froesel directed that "false clinical data" be created and provided to physicians.  (Doc. 139 at 26).  The paragraphs of the TAC cited, however, do not support that

serious allegation.  Although couched in ominous tones, these paragraphs actually allege (through a confidential witness, CW1) only that Froesel identified regions that needed a "revenue boost" and directed Regional CFOs to garner data to support initiatives which would lead to such increased revenues through the drug interchanges.  (TAC ¶¶ 33-34).  The ensuing paragraphs which allege that Omnicare employees then put a "clinical spin" on information communicated to physicians and LTCFs support no inference of illegality.  The averment that letters sent by Omnicare to physicians "misrepresent[ed] the efficacy and/or cost benefits of the target drug" lacks any alleged nexus to Froesel.  (TAC ¶ 38).  Nor does the complaint allege that such misrepresentations were made at Froesel's direction or with his knowledge.

The allegations against Gemunder are similarly lacking.  For example, the TAC -- as opposed to plaintiffs' brief -- alleges only that Gemunder approved drug-switching initiatives that would increase Omnicare's profitability.  (TAC ¶ 31).  The allegations about the "Risperdal Initiative" specifically make no mention of Gemunder.  (TAC ¶¶ 67-71).[7]

---

[7]Plaintiffs cite in their brief a "corporate document" attached to the TAC as Exhibit 7 as evidence of their claim

13

Further, contrary to plaintiffs' arguments, the Sixth Circuit has also rejected the argument that Omnicare had a "duty to disclose" its allegedly illegal activities. *Omnicare*, 583 F.3d at 946.

### Conclusion

In sum, the TAC does not provide sufficient factual basis to support the § 11 claim asserted against defendants.  The Court thus need not reach the arguments regarding loss causation.


Therefore, having reviewed this matter, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** that defendants' motion to dismiss plaintiffs' Third Amended Complaint (Doc. 138) be, and is hereby, **GRANTED**.  A separate Judgment shall enter concurrently herewith.

This 13th day of February, 2012.



Signed By:

*William O. Bertelsman*

United States District Judge

---

against Gemunder.  This document – which is unexplained and unauthenticated (indeed, it is not clear who the author is), merely states: "Joel Gemunder, President of Omnicare contacted David Norton, Pres. of Janssen on Friday, Sept. 18 to say that Omnicare would continue to support Risperdal."  The Court finds nothing in this document to support the inferences plaintiffs advocate.