1               UNITED STATES DISTRICT COURT
                 EASTERN DISTRICT OF KENTUCKY
2              NORTHERN DIVISION AT COVINGTON

3   INDIANA STATE DISTRICT COUNCIL OF
    LABORERS AND HOD CARRIERS PENSION
4   and WELFARE FUND, ON BEHALF OF ITSELF
    and ALL OTHERS SIMILARLY SITUATED,
5
            PLAINTIFFS,
6
                                    Civil No. 2:06-CV-26
7   VS.                             At Covington, Kentucky
                                    July 13, 2018
8                                   10:32:20 a.m.

9   OMNICARE, INC., JOEL F. GEMUNDER,
    DAVID W. FROESEL, JR., CHERYL D. HODGES,
10  and SANDRA E. LANEY,

11          DEFENDANTS.
                          - - - -
12
    TRANSCRIPT OF TELEPHONIC STATUS/SCHEDULING CONFERENCE
13     BEFORE U.S. MAGISTRATE JUDGE CANDACE J. SMITH
    *Recording #KYED-COV_2-06-cv-26-WOB_CJS-20180713_092424*
14
                          - - - -
15   APPEARANCES:

16   For the Plaintiff:   HENRY ROSEN
                          STEVEN W. PEPICH
17                        Robbins Geller Rudman & Dowd, LLP
                          655 West Broadway
18                        Suite 1900
                          San Diego, California  92101-8498
19                        (619) 231-1058

20                        KEVIN L. MURPHY
                          Murphy Landen Jones, PLLC
21                        2400 Chamber Center Drive
                          Suite 200
22                        P. O. Box 17534
                          Ft. Mitchell, Kentucky 41017-0534
23                        (859) 578-3060

24        Proceedings recorded by digital recording,
        transcript produced by computer.
25

SANDRA L. WILDER, RMR, CRR, OFFICIAL COURT REPORTER
330 Broadway, Suite 327, Frankfort, Kentucky  40601
(859) 516-4114

1

2

APPEARANCES:   (Cont.)

3

4   For the Defendants:   JOHN E. SCHREIBER
                          JILL K. FREEDMAN
5                         Winston & Strawn, LLP
                          200 Park Avenue
6                         New York, New York  10166
                          (212) 294-47089
7
                          MICHAEL E. NITARDY
8                         Frost Brown Todd, LLC
                          7310 Turfway Road
9                         Suite 210
                          Florence, Kentucky  41042
10                        (859) 817-5900

11                         HEATHER BARBER
                           Omnicare In-house Counsel
12

13

14

15

16

17

18

19

20

21

22

23

24

25

1      [Procedings commenced at 10:32:20 a.m.]

2      THE COURT:  Good morning, everyone.  This is

3  Judge Smith.

4      We are on the record in Covington Civil

5  06-26, Indiana State District Council of Laborers and

6  Hod Carriers Pension and Welfare Fund, et al. versus

7  Omnicare, et al.

8      Let's go ahead and have entry of appearances

9  for purposes of our record.  Who is on the line,

10  please, on behalf of the plaintiffs.

11      MR. ROSEN:  Good morning, Your Honor.  Henry

12  Rosen from Robbins Geller is on the phone for

13  plaintiffs.

14      And with me on the phone from my office is

15  Stephen Pepich, and our local counsel on the case,

16  Kevin Murphy, is also on the line.

17      THE COURT:  Okay.  Thank you.  And then how

18  about -- who is on the call on behalf of the

19  defendants?

20      MR. SCHREIBER:  Good morning, Your Honor.

21  It's John Schreiber of Winston & Strawn on behalf of

22  defendants.

23      With me on the line is my colleague Jill

24  Freedman.  And we also have Michael Nitardy from Frost

25  Brown Todd in Kentucky, as well as Heather Barber, who

1    is in-house at Omnicare.

2         THE COURT:  Okay.  All right.  Does that

3    cover everyone then who is on the line?  Or let me put

4    it this way:  If there is anyone who is on the line

5    who has not been recognized, speak up now, please.

6         All right.  Well, let's go ahead and move

7    forward then.

8         So, counsel, I set this for a phone call

9    today because I think we started off with a joint

10   request by you all to have a scheduling conference.

11        But since that's been filed and this has been

12   scheduled, I do see that the -- the proposals that you

13   all sent, sent to my chambers, I believe, are

14   differing a bit in how things should look moving

15   forward.  So I think we should probably talk about

16   that.

17        As I understand it, you have a fact discovery

18   deadline.  Judge Bertelsman, I know, has some motions

19   pending before him, or, I guess, conditionally

20   pending, depending upon certain circumstances.  And

21   then he signed off on an agreed proposal that you all

22   had presented, I think, last fall, late last fall.

23        One of the deadlines included in that agreed

24   order or stipulation was for a July 20 fact discovery

25   deadline, as I recall, and that's one of the primary

1 areas that it appears the two sides have a

2 disagreement with, as far as extension of that

3 deadline.

4        So who's going to, who's going to address

5 that on behalf of the plaintiffs?

6        MR. ROSEN:  I'm, I'm going to address it,

7 Your Honor.  This is Henry Rosen from Robbins Geller.

8        THE COURT:  Okay.  All right.  So I've looked

9 over your proposal, and as far as the, the latter

10 portion of things with respect to experts and so

11 forth, it looks to me like you all are not that --

12 you're, you're in agreement on most of that aspect of

13 the case.  It does seem like this next step moving

14 forward appears to be what's in dispute right now.

15       So, Mr. Rosen, so is it correct that over the

16 course of the last several months then, there have

17 been two depositions that have been taken by the

18 plaintiff?

19       MR. ROSEN:  Yes, that's correct, Your Honor.

20 We, we, we want to emphasize that we believe that the

21 Court, before setting any new discovery cutoff in the

22 case, should rule on the pending motion to compel that

23 we filed because we believe that it's going to have a

24 big impact on the remaining fact discovery that needs

25 to be completed.

1       THE COURT:  Well --

2       MR. ROSEN:  We believe that Judge Bertelsman

3 is keenly interested in (unintelligible), as he's

4 indicated in two previous hearings, and will probably

5 need time to write an opinion in this matter because

6 of the importance, and because the case has been up to

7 the Supreme Court two times.

8       On the second issue, that is, what the cutoff

9 should be in the case, I want to emphasize that the

10 parties are really not that far apart in their

11 separate requests as to the schedule.

12       The defendants have offered September 20 --

13 sorry, September 30 as a cutoff date, and we have

14 asked for 33 or whatever number of days more than that

15 to November 2, with the caveat that depending on how

16 long the motion to compel ruling takes, and what --

17 how that comes out, it could impact our need for a

18 little bit more time to collect the documents that

19 have been withheld on the basis of privilege or

20 documents that have not been produced on the basis of

21 privilege.

22       But I want to emphasize to the Court that in

23 stark contrast to what the defendants claim we've been

24 doing in the case, we have been diligently pursuing

25 this case since the documents were produced last year.

1          In a normal case, Your Honor, if a party

2    produces over a million documents and -- which

3    constitute over four million pages of documents,

4    having just eight months to review those documents, to

5    get your witnesses lined up, and to figure out who the

6    important players are is a pretty good time frame.

7    Here, we needed much more time than that to get the

8    documents in the usable order because of the age of

9    the case.

10          As you can see from the parties' submissions,

11   the documents are, you know, between 15, 18 years old,

12   and the manner in which they were produced has made

13   the review of those documents, finding emails, finding

14   their attachments, has been a tremendous burden in

15   this case, Your Honor, because of the age of the

16   production.

17          There have been literally tens of thousands

18   of documents where the emails are orphaned from the

19   attachments, and vice-versa, and it's made searching

20   for the documents, as is the custom or the practice

21   now, much, much more difficult, and has required that

22   we go through the documents with much, much more

23   detail than just doing a search for people's names.

24          THE COURT:  Okay.

25          MR. ROSEN:  The other big, the big dispute

1   that we're having isn't so much over the schedule,

2   because I don't consider 32 days in a case that's gone

3   on for 12 years to be that big of a difference, but

4   the big difference that we're having is over the

5   number of witnesses, Your Honor.

6           The defendants are playing games in their

7   submission about the proposed order for the number of

8   depositions to be allowed.  If you read their

9   submission to Your Honor, they -- you would get the

10  impression that they believe the only thing at issue

11  that we have to prove is whether there was omissions

12  or misleading statements in the registration

13  statement.

14          But in their submission in opposition to our

15  motion to compel on page 21, and that's ECF filing

16  number 296, they cite to the Supreme Court decision in

17  this case, which states what plaintiffs have to show

18  at a minimum to prove falsity and liability in this

19  case.  And that would require plaintiffs to prove that

20  Omnicare was in fact violating the law when the

21  registration sheet statement was issued, and two,

22  plaintiffs have to identify material fact that was

23  omitted from the registration statement.  Yet, if you

24  read their submission, they're saying we don't need

25  depositions of lower-level people because the only

thing at issue is whether there was an omission from
the registration statement.

Well, throughout this case, they have pointed
out to the Court over and over again that they settled
all of their Qui Tam cases without admitting any
liability, and they have taken the position over and
over again that plaintiffs have to prove both of those
points.

Now, when it comes time to taking
depositions, they don't want us to have the number of
depositions that we need in order to show that
Omnicare was in fact violating the law.

As we said in our submission on page 10, Your
Honor, this case involves wrongdoing related to 11
pharmaceutical companies and wrongdoing related to
over 50 different drugs.

All the wrongdoing that's alleged in the
third amended complaint relates to wrongdoing that
happened prior to the offering which made their
statements or complying with the law illegal.  I'm
sorry, misleading.

In, in contrast to those 11 pharmaceutical
companies and those 50 drugs, we have only asked to
take depositions of fact witnesses at the company who
were carrying out the orders to engage in illegal

1   conduct related to four issues.  We have not asked for

2   fact witness depositions relating to all 11

3   pharmaceutical companies or all 50 drugs, which I

4   would submit, we would have the right to do in this

5   case.  And if that were the case, we would be talking

6   about dozens and dozens and dozens of depositions, and

7   not just the 30 we've asked for.

8          During our month-long meet and confer, we did

9   narrow our request down to 17, without prejudice for

10  us to come back to ask for more, but we couldn't even

11  get agreement from them on the 17.  And now they've,

12  now they've filed something that said, Hey, they can

13  take 12, and if they need to take five more, they can

14  come back and ask for more.

15         But what I'm afraid the game that they're

16  playing here, Your Honor, is they do not want us to go

17  down to the regional clinical director level at the

18  company and question people at the company who were

19  responsible for carrying out the drug switching

20  initiatives which violated the Anti-Kickback Statute,

21  the False Claims Act, and a myriad of state Medicaid

22  regulations, and because they would rather that we

23  only are allowed to depose the higher-level people.

24  They want us to take the higher-level people first,

25  and then go back and show good cause of why we need to

1 take the lower-level people. That's completely

2 backwards in my experience in this area, Your Honor.

3 It's much more normal to take the lower-level people

4 first, find out what the story is, and then take the

5 higher-level people.

6      I really don't think we're that far apart,

7 but I want the Court to be aware of, that's the game

8 they're playing with [unintelligible].

9      And I also want to conclude for the moment on

10 the note that we have been diligently pursuing this

11 case since the documents were produced. I want the

12 Court to be, also to be aware of the fact that the

13 documents had to be reproduced within the fall of last

14 year, so we didn't have the benefit of being able to

15 use the documents that were produced earlier, in late

16 2016 and early 2017.

17      The clock on the document review really

18 started ticking in Sept -- in August and September of

19 last year. And as the Court is aware from our

20 submissions, we have been steeply involv -- deeply

21 involved in class certification and related motions to

22 that, that have lasted literally through the end of

23 May of this year, Your Honor.

24      In addition to the depositions we've taken,

25 we had to prepare our clients to sit for two

1  depositions in this case, and we've had to make

2  someone else an expert that we'd used on class

3  certification available.

4          So I want, I wanted the Court to be aware

5  that this case is being diligently pursued, and we, we

6  have been slowed by the nature of the document

7  production.

8          THE COURT:  Okay.  Well, I have some

9  questions for you, Mr. Rosen, but let me, let me hear

10 from the defendant first.

11         MR. SCHREIBER:  Thank you, Your Honor.  This

12 is John Schreiber on behalf of defendants.

13         And first, let me assure the Court that we

14 are not playing any games.  I suspect it comes as no

15 surprise that we might balk at the notion that

16 plaintiffs would be allowed to take 30 or more

17 additional depositions in this case in light of a

18 presumptive limit under the rules of 10 per side, so

19 that, that's really the starting point.

20         In terms of what we proposed, and I, I agree

21 with my friend Mr. Rosen that it's probably more about

22 the number of depositions and scope than it is about

23 the timing.  If the Court were to allow 30

24 depositions, I think we would at least need those,

25 those five weeks that is the delta between our

1  schedules, so I think it's more about the number.

2         What we have proposed, we think, is a

3  reasonable compromise.  It goes beyond the presumptive

4  limit under the rules.

5         In terms of the specifics, I, I agree with

6  Mr. Rosen in terms of what plaintiffs have to prove in

7  this case, that they will have to prove underlying

8  illegality.  And then the second step is that the

9  senior management at Omnicare, who is responsible for

10 putting together the registration statement, either

11 knew of the illegality or knew certain facts that

12 rendered their statements misleading by omission,

13 paraphrasing what -- how I read the Supreme Court's

14 decision, but there is a focus on sort of a top down

15 element to this case about what senior management knew

16 and thought at the time.  So that was our suggestion,

17 let's at least start with those people.  You're going

18 to have to prove that.

19        We also believe that the people we had

20 identified are going to be in the best position to

21 speak to the underlying alleged illegality that

22 plaintiffs have identified, and we had built into our

23 proposal that, you know, both in terms of what we put

24 in writing and when Mr. Rosen and I had these

25 discussions, that we think this is the place to start,

both in terms of, of that second piece of it, what did
senior management know and think at the time, but also
in terms of getting the facts on the underlying
issues, that we suggested you start with those
witnesses.  And in terms of third parties and
lower-level people, we think they're of marginal
relevance, perhaps some; we can't tell you that there
are none, but less so.

So we can start with senior management, and
based on those depositions, if these witnesses don't
have the information, or continue to point to other
people who have better information, that might be a
basis to continue to pursue additional depositions.

So that was our proposal, let's start with
this set of 10 or 12, and try to get that done by the
end of September, subject to witness availability,
without prejudice to plaintiffs' ability to make an
application to take further depositions, obviously
without prejudice to defendants' ability to oppose
that.  So that is our view on --

THE COURT:  Mr. Schreiber -- Mr. Schreiber,
let me interrupt you just a minute.  I'm sorry.

MR. SCHREIBER:  Please.

THE COURT:  Did you say that Mr. Rosen was in
agreement with that?

1          MR. SCHREIBER:  No, he, he did not agree --
2     well, I, I'm sure he agrees with the basic notion that
3     whatever they get to begin with, they can always come
4     back and ask for more.  But my understanding is that
5     they did not agree with, with that proposal that we
6     start with, say, 12 by the end of September, and then
7     they have the ability to come back and ask for more,
8     depending on how those go.  My understanding is that
9     that's not acceptable to plaintiffs.
10          THE COURT:  Okay.  All right.  And you can
11     continue.  Thank you.
12          MR. SCHREIBER:  Okay.  So that is, and I
13     think it's pretty well set forth in our papers, that's
14     our view on depositions.  You know, we have laid out
15     in sort of both our take on, on the procedural history
16     here, and the diligence or lack thereof that
17     plaintiffs have proceeded under, I don't need to
18     belabor that.
19          The only other point I would make for the
20     moment, subject to whatever questions Your Honor has,
21     is on this -- the motion to compel, which I, I gather
22     is directed to Judge Bertelsman, not Your Honor, but
23     that relates to a, a motion for protective order that
24     we filed last summer, I believe.  It was heard in
25     November --

1          THE COURT:  Right.

2          MR. SCHREIBER:  -- at the time --

3          THE COURT:  Docket entry number 235.  I'm

4   familiar with that, right.

5          MR. SCHREIBER:  Yes.  And at the time, Judge

6   Bertelsman concluded that on the record before him, he

7   couldn't find that Omnicare had waived its

8   attorney/client privilege.  But because of the fears

9   that plaintiffs had expressed about the, the

10  possibility that defendants would somehow use the

11  privilege as a sword and a shield, Judge Bertelsman

12  deferred ruling on that, and suggested the plaintiffs

13  take depositions to see if their fears were realized.

14         My understanding is that the motion to compel

15  that they recently filed, the, the ostensible basis

16  for that is the deposition of Ms. Laney, one of our

17  clients, a former director of the company that took

18  place on March 22.  I'm not going to argue the merits

19  of the motion here, but I note that that is the

20  ostensible basis for this motion, and that deposition

21  was March 22, I believe, give or take a day, and

22  plaintiffs waited until very recently, I think nearly

23  two months, to file that motion.

24         So from our viewpoint, not only do we, do we

25  think the -- there's no merit to the motion, but we'd

1  rather not delay the schedule indefinitely for that to

2  be heard, argued, decided before we even get started

3  on future depositions.

4      We obviously understand the risk that if,

5  contrary to our views on it, a motion were granted,

6  that that could lead to possibly reopening

7  depositions.  We think that would be limited, both in

8  terms of the number of witnesses that would apply and

9  in terms of the scope of reopening.

10      So our position on that is that we'd rather

11  not wait for a hearing and decision on that before we

12  get going with the rest of these depositions.

13      THE COURT:  Okay.  All right.  All right.

14  Thank you.

15      So, Mr. Rosen, in looking through the record

16  then, when you all had your conference, your motion

17  hearing with Judge Bertelsman back in the fall of last

18  year, it's my understanding from reading the

19  transcript that the Judge was at least initially

20  contemplating that when these depositions were

21  commenced, that there was the possibility that they

22  would be recessed in progress and that you all would

23  be coming back to him on this issue of attorney/client

24  privilege and Work Product Doctrine with respect to

25  the outside attorneys.  Is that not correct?

1        MR. ROSEN:  Yes, Your Honor, that is correct.

2   And given those instructions during the November 14

3   hearing, we, shortly thereafter, asked the defendants

4   to make Defendant Laney available for deposition, and

5   because of the crush of this (unintelligible), and

6   because of the witness availability, we did not get

7   her deposition until March 23.

8        So we feel, we feel that we have been

9   pursuing the case diligently, and we feel that the

10  inefficiencies caused by having to postpone or reopen

11  depositions don't make any sense in this case, because

12  the issue of whether or not they had attorney

13  opinions, legal advice, which gave them the okay to

14  engage in conduct which they later paid hundreds of

15  millions of dollars in fines for is something that

16  permeates down to the level at the company far, far

17  below the senior management.

18        There are documents, as we pointed out in the

19  motion to compel, which indicate that they were

20  telling the pharmacist level people at the company,

21  that conduct which they questioned was improper, that

22  they had legal opinions that it was okay.

23        We, we think that the privilege issue so much

24  permeates the conduct at the company, that the

25  suggestion that we should take these depositions and

postpone them or reopen them doesn't make any sense,
if (unintelligible) issues are going to come up at
every one of the depositions.

THE COURT:  Okay.  So is it fair to, to
consider then that the motion to compel that was
recently filed by the plaintiffs or filed at the
beginning of this month is the follow-up essentially
to a motion for protective order and the motion
conference that you all had with Judge Bertelsman from
last fall?

MR. ROSEN:  Yes, Your Honor.  Like I say, I
believe we filed our motion in June, and yes, that,
that's exactly right; it's the follow-up.  And the
information that we receive from the two depositions
we took and the documents, which, in the meantime, the
defendants called back are the reason we're bringing
that forward now.

THE COURT:  Okay.  All right.  And I do see
here, that's right, the -- a motion was filed in early
June, and the response was filed.  And I think there
is a reply due today; is that correct?

MR. ROSEN:  That's correct, Your Honor,
we're, we're going to file that later today.

THE COURT:  All right.  Well, Mr. Rosen, I'm
hearing with respect to the deposition status, a

1  couple of questions on that.

2          One, I'm hearing some differing numbers here.

3  There's been a reference to, by Mr. Schreiber to 12

4  persons to be deposed, that the plaintiffs are asking

5  for 30 persons.  You referenced the number of 17 when

6  you were speaking earlier in this call.

7          Where are we on the number of folks that the

8  plaintiff is asking for leave to take in excess of the

9  ten?

10          MR. ROSEN:  Sure.  Fair question, Your Honor.

11  The --the parties are in agreement about ten -- I'm

12  sorry -- about 11 or 12 depositions.  The number, the

13  number is fuzzy because one of our requested deponents

14  is an elderly former member of the board of directors,

15  and the signal or indication that I received from John

16  is that he may not be capable of sitting for

17  deposition.

18          THE COURT:  Okay.

19          MR. ROSEN:  The main, the main, the main

20  disagreement that we have now between the 12 and the

21  17, which we offered in compromise when I was meeting

22  and conferring with him, is that most of those five

23  additional people are from third parties who were

24  directly involved in the conduct, which we allege was

25  illegal relating to Johnson & Johnson.  We've asked

1 for two or three people from Johnson & Johnson;

2 they've offered none.  We've asked for people from

3 Mariner; they've offered none.  We've asked, we've

4 asked for people from INVICTA; they've offered none.

5       We are, we are perfectly willing to go

6 forward at this time with the 17 offered, Your Honor.

7 The reason that I wanted to keep the number of 30 in

8 there was both for, in the event that additional

9 people come up and we don't have to come back and

10 fight about it, but also.  Depending on how the Court

11 rules on the motion to compel, and if we need to have

12 additional depositions of attorneys who provided

13 transactional and healthcare regulatory advice to

14 Omnicare.

15       But I, I would say now, the main difference

16 between our numbers, I'm sorry, the 12 and the 17, is

17 that we need some depositions from the third parties

18 who were on the other end of the transactions which we

19 claimed violated the law.

20       THE COURT:  And within either the 12 that

21 have been agreed upon or the 17 total, do -- included

22 among those, are any of the attorneys that are

23 involved in the motion for protective order and the

24 motion to compel among those persons?

25       MR. ROSEN:  No, Your Honor.  There are no

1  attorneys in any list, whether you look at their 12,

2  the compromised 17, or our request for 30.  The 30

3  witnesses that, that we requested, I listed in our

4  submission in the chart that's, that's in the latter

5  portion of our solution.

6         THE COURT:  Okay.  All right.  Well -- and so

7  I wasn't quite clear in your, in your written

8  presentation, you are not asking, for example, that

9  all fact discovery be on hold until the motion to

10 compel is adjudicated; is that correct?

11        MR. ROSEN:  Well, that would be our first

12 request, Your Honor.  We're certainly happy to get --

13 we're certainly happy to get started on depositions,

14 but we believe that the likelihood that the issue is

15 going to cause even lower-level depositions to be

16 reopened if there's a high likelihood of that.

17        But if, if the Court prefers, we can, we can

18 try to schedule the lower-level people that may have a

19 lesser than impact on.  But that was, that was our

20 request.

21        THE COURT:  Well, well, I'm mindful that I

22 think that when Judge Bertelsman talked with you all

23 last fall about the eight-month period, he didn't

24 think that that was unreasonable, but I, I think he

25 cautioned both sides that it is an old case, although

1  it is an older case, I should say, although a complex

2  case, and nevertheless, he wanted to keep it moving.

3       So I would not be inclined to just put a hold

4  on any type of continued fact discovery while the

5  motion to compel was being adjudicated.

6       All right.  Here, here's what I'm going to

7  do:

8       Based upon the submissions that you all have

9  offered, and hearing from you all this morning, I,

10  one, I am assuming that Judge Bertelsman, since he

11  took up the motion for protective order last fall and

12  then took that under advisement, pending further

13  proceedings on the issue, once the depositions were

14  embarked upon, I am assuming that he is going to

15  address that motion to compel.  And certainly, if I

16  hear otherwise, then you all will be, will be hearing

17  from the Court further on that.  But at this point, I

18  am assuming that he is going to address that in

19  conjunction with the motion for a protective order.

20       And based on what I'm hearing from you all

21  and looking at, quite frankly, what has been

22  accomplished thus far over the eight-month period, I

23  understand that both sides have different views on how

24  diligent or not that has occurred, but I'm also

25  mindful that the case does in fact involve a pretty

1  broad scope of at least alleged conduct that will

2  factually need to be explored by the plaintiffs in

3  furtherance of their claims at this point.

4          And I'm also mindful of, like I said, over

5  the course of the last eight months what you all have

6  been able to accomplish versus what you're both

7  telling me you still need to do.

8          I think at this point what I'm going to do is

9  I will extend out the fact discovery deadline, and

10  although I have certainly heard what the defendants

11  have had to say about that in terms of an offered

12  compromise.  Quite frankly, just given the number of

13  attorneys involved in this matter, and the scope of

14  the issues, it's in the middle of summer, and I find

15  most all of my cases, it's just becoming very

16  difficult to try to get things scheduled.

17          So I'm going to go ahead and grant the

18  request to extend that fact discovery deadline out for

19  four more months.  And then over the course of these

20  next four months, as I say, I'm not going to stay

21  discovery or fact discovery anyway.  That needs to

22  continue on and continue on in a very robust manner by

23  the plaintiffs, if you're talking about potentially

24  the number of people that you are over and above that

25  of the attorneys that are involved in the protection

1    order and the motion to compel.

2           So we're going to extend it out for four

3    months for the fact discovery.  And then as far as the

4    scope of the additional depositions, while I certainly

5    understand why the defendants have proposed what they

6    have proposed, as you all know, it is up to the

7    plaintiffs to carry the burden here of establishing

8    their claims.  And generally speaking, discovery can

9    be taken in any order, unless the Court otherwise

10   orders.

11          And so at this point, I haven't really heard

12   anything that -- other than while the defendants may

13   like to have that discovery or those fact depositions,

14   additional fact depositions taken in a different

15   order, I'm not, I'm not hearing anything that would

16   compel the Court to do that in terms of trumping the

17   plaintiffs' discretion to conduct that fact discovery

18   in the order that they wish to do so.

19          So I am going to permit the plaintiffs to

20   take additional depositions.  They can decide who they

21   want to depose in the order of those depositions in

22   terms of whether it's higher-ups or lower-levels.

23          I will permit the plaintiffs to take In

24   excess of ten depositions at this stage.  And rather

25   than the 12 that have been agreed upon, it's going to

1  be limited to the 17, Mr. Rosen, that you have

2  indicated, at this point anyway.

3          You are interested in deposing the 12 that

4  have been agreed upon by the parties, or potentially

5  12, depending upon the one particular witness's

6  stamina to be able to participate in a deposition.

7  And the additional five persons that you mentioned who

8  are not on the higher-up list, so to speak.

9          I do think the plaintiffs ought to be given

10 the discretion to at least explore that somewhat.  As

11 I say, this is discovery and they have the obligation

12 of proving their claims.

13         But, Mr. Rosen, anything further, anything

14 over and above the 17 or the four-month timeline is

15 going to need to be either the parties confer and

16 reach an agreement about that, or it's going to need

17 to be presented to the Court by way of -- I assume by

18 way of motion.

19         You, you all don't -- I'm a little newer to

20 the case here.  I know Judge Wehrman was overseeing

21 the discovery for a number of years.

22         Do you all have a, what I call a three-step

23 order in this case where you have to contact chambers

24 before you can file a discovery motion?  Mr. Rosen,

25 does that sound familiar?

1          MR. ROSEN:  No, no, Your Honor, we don't.

2          THE COURT:  Okay.  All right.  Then what

3    you're going to have to do is if there's something

4    else about the discovery, the fact discovery time

5    line, the four months or over and above the 17, you're

6    going to need to file a written motion, and you all

7    are not in agreement over it, then you'll need to file

8    a written motion to bring that to the Court's

9    attention.  And then, of course, I'll take that up at

10   that time.

11          My thought is that -- well, two things.  One,

12   I'm not inclined to visit any of the other proposed

13   deadlines that you all have offered at this juncture,

14   simply because I think it's probably premature.

15          I do know Judge Bertelsman wants to keep this

16   case moving.  But frankly -- and this is the second

17   point -- I'm hopeful that, and I certainly think that

18   it will -- that the motion to compel is going to go

19   ahead and move along.  Either Judge Bertelsman will

20   take that up, or indicate to me that he wants me to do

21   so.  And that you all have a ruling with respect to

22   the protective order as well as the motion to compel

23   within this four-month time frame that fact discovery

24   is going on.  So that either at upon conclusion of the

25   rulings on those two motions by Judge Bertelsman, or

1  in a subsequent separate conference with me, I think

2  that we'll be dealing with setting the remainder of

3  the additional deadlines that need to occur here.

4        And I think one or both of you pointed out

5  that the parties don't appear to be in disagreement

6  about what needs to happen moving forward, or

7  substantially in disagreement what needs to happen

8  moving forward after this fact discovery deadline is

9  taken care of.

10        But between the two pending motions

11  concerning the attorney/client privilege and Work

12  Product Doctrine, and the, the fact witnesses that

13  need to be deposed, I think it's this upcoming

14  four-month period or so that's going to be critical

15  for both sides just in terms of keeping the case

16  moving on everything that you can for the current

17  moment with regard to fact discovery.  And then we'll

18  see what happens with the ruling on the other end

19  whether any additional fact discovery needs to occur

20  in light of that.  So that's, that's going to be the

21  ruling of the Court at this point.

22        Let me make sure one, that no one has any

23  questions about that, and two, whether there's

24  anything further that anyone needs to bring to my

25  attention while I have you all on the phone.

1      So what about on behalf of plaintiffs,
2  Mr. Rosen?
3      MR. ROSEN:  Yeah.  Just one question, Your
4  Honor.  In the event that plaintiffs prevail on the
5  motion to compel and/or the protective order, would,
6  would it be your preference, if the parties can't
7  agree on what document discovery is warranted and what
8  depositions are warranted going forward, that we
9  present that to you via the same motion process that
10 you just described?
11     THE COURT:  Well, if there's any type of
12 discovery impasse under 37, of course, you're going to
13 confer first with each other, and then yes, you'll
14 have to file a motion with respect to those, right.
15 And --
16     MR. ROSEN:  Okay.
17     THE COURT:  I'm sorry.  Go ahead.  Go ahead.
18     MR. ROSEN:  No, no.  I interrupted you.
19 Sorry.
20     THE COURT:  Well, I suspect that Judge
21 Bertelsman, when he adjudicates those two motions,
22 will be taking up with you all what the consequences
23 are of that moving forward.
24     But I, I certainly understand that as you are
25 actually executing that and moving forward, if there's

1  further execution to be done, that there may be

2  questions that arise.

3       And to that extent, if they do -- I'll put it

4  this way -- I'm not sure if this was your question --

5  but there is no three-step order that's been entered

6  in this case.

7       If the parties confer with each other and are

8  still not able to reach an agreement on something, if

9  the one thing that you can reach an agreement on is

10  that you would like to talk with me about something

11  informally, and both sides agree to that, then you can

12  call my chambers and I'll be happy to see if I can

13  talk through that issue with you, or issues.

14       But otherwise, if you're not agreeable to an

15  informal conference with the Court, then anything in

16  follow-up to that discovery ruling, those discovery

17  rulings, you'll need to go ahead and file a formal

18  motion.  Does, does that answer your question,

19  Mr. Rosen?

20       MR. ROSEN:  That does, and it answers my

21  question.  Steve or Kevin, do you guys have any

22  questions?

23       MR. PEPICH:  I think not.  Thank you, Your

24  Honor, very much.

25       THE COURT:  Was that Mr. Pepich?

1          MR. PEPICH:  Steven Pepich.  Yes, Mr. Pepich

2    speaking.

3          THE COURT:  Okay.  And, Mr. Murphy, what

4    about you?

5          MR. MURPHY:  No questions, Your Honor.  Thank

6    you for your time.

7          THE COURT:  Uh-huh.  And then, Mr. Schreiber,

8    sir, what about on behalf of the defendants?

9          MR. SCHREIBER:  I, I don't have any other

10   questions.  I would note we also have a -- or

11   plaintiffs motion, but the motion for class

12   certification is still pending.  I don't think that

13   will have any particular impact on, on what we're

14   discussing here today.  Otherwise, I'll defer to my

15   colleague, Mr. Nitardy.

16         THE COURT:  Okay.  All right.  That's fine.

17         And the class, the class cert motion, refresh

18   my memory, Mr. Schreiber.  You all had at least one

19   conference with Judge about that, correct, Judge

20   Bertelsman?

21         MR. SCHREIBER:  We -- yes, we did, and he

22   authorized us to take further discovery and to submit

23   a surreply, which we did, I believe about a month ago,

24   so it's now fully briefed --

25         THE COURT:  Okay.

 1          MR. SCHREIBER:  -- including supplemental

 2   briefing.

 3          THE COURT:  All right.  So that has been

 4   submitted to him as well then.

 5          MR. SCHREIBER:  Yes.

 6          THE COURT:  All right.  But as you've noted,

 7   that is non-discovery related at this point.

 8          MR. SCHREIBER:  Right.

 9          THE COURT:  Okay.  All right.  And then,

10   Mr. Nitardy, what about you, sir?

11          MR. NITARDY:  No questions.  Thank you, Your

12   Honor.

13          THE COURT:  Okay.  And, Ms. Freedman?

14          MS. FREEDMAN:  No questions.  Thank you.

15          THE COURT:  All right.  Let's see here.  I

16   think that's -- I'm just looking over my notes real

17   quickly here.  I think that does cover everything.

18          All right.  Folks, I will get a minute entry

19   entered then, and that will reflect the four months,

20   along with the 17 at this point.

21          And then I'll -- I will go ahead and converse

22   with Judge Bertelsman just in terms of those two

23   motions and what his intentions are, whether his

24   chambers will be addressing those, or if he wishes to

25   do that otherwise.  But if anything changes with that,

1  you'll be receiving an order from the Court about

2  that, so -- all right.

3          Very well.  Well, enjoy the rest of your day,

4  and we'll get these minutes filed.  Thank you very

5  much.  Bye-bye.

6          MR. ROSEN:  Thank you, Your Honor.

7          MR. SCHREIBER:  Thank you, Your Honor.

8          [PROCEEDINGS ADJOURNED AT 11:54:44 a.m.]

9                          * * * * *

10         I,  Sandra L. Wilder, do hereby certify that

11 the foregoing is a true, correct and complete

12 transcript of the digitally-recorded proceedings in

13 this matter, recorded on July 13, 2018, and

14 transcribed from the digital recording, to the best of

15 my ability to hear said recording, and that said

16 transcript has been compared with the digital

17 recording.

18

19         /s/ Sandra L. Wilder

20         SANDRA L. WILDER, RMR, CRR,

21         COURT REPORTER          Date:  08/22/2018

22

23

24

25